PROB 12C
(Rev. 2011)

# United States District Court
for
Middle District of Tennessee

## Superseding Petition for Warrant for Offender on Supervision
### [Supersedes Petition Filed as Docket Entry No. 59]

Name of Offender: <u>Jamal Bekhtyar</u>  Case Number: <u>3:12-00142</u>

Name of Sentencing Judicial Officer: <u>Honorable John T. Nixon, Senior U.S. District Judge</u>

Date of Original Sentence: <u>February 22, 2013</u>

Original Offense: <u>18 U.S.C. § 2113(a); Bank Robbery</u>

Original Sentence: <u>35 months' custody and three years' supervised release</u>

Type of Supervision: <u>Supervised release</u>  Date Supervision Commenced: <u>March 18, 2015</u>

Assistant U.S. Attorney: <u>Sandra Moses</u>  Defense Attorney: <u>Sumter Camp</u>

---

### PETITIONING THE COURT

__X__ To Consider Additional Violations/Information.
_____ To Issue a Summons.
__X__ To Issue a Warrant.

---

### THE COURT ORDERS:

☐ No Action.
☒ The Issuance of a Warrant:
   ☐ Sealed Pending Warrant Execution
      (cc: U.S. Probation and U.S. Marshal only)
☐ The Issuance of a Summons.
☒ The Consideration of Additional Violations/Information.
☐ Other.

Considered, this the _12th_ day of _January_, 2016
And made a part of the records in the above case.

_____
John T. Nixon
Senior U.S. District Judge

I declare under penalty of perjury that the
Foregoing is true and correct.
Respectfully submitted,

_____
Michael C. Wilson
U.S. Probation Officer

Place: __Nashville, Tennessee__

Date: __December 23, 2015__

## ALLEGED VIOLATIONS

The information provided in the previous petition, filed as docket entry 59, has been amended as follows:

Violation No. 3 - has been amended to report noncompliance with drug testing.

Compliance with Supervision Conditions and Prior Interventions - has been amended to include updated information.

The probation officer believes that the offender has violated the following conditions of supervision:

| Violation Number | Nature of Noncompliance |
| --- | --- |
| **1.** | **The defendant shall not commit another federal, state, or local crime.** |

On April 5, 2015, Mr. Bekhtyar was issued a misdemeanor citation for Possession of a Controlled Substance, Case No. SC1045912, in Davidson County, Tennessee.

Nashville Metropolitan Police made contact with Mr. Bekhtyar after observing him next to a vehicle with an alarm going off. While speaking to Mr. Bekhtyar, police observed what appeared to be a "white rock like substance" on the driver's seat. The "white rock like substance" field tested positive for cocaine base. Police searched Mr. Bekhtyar's person and found drug paraphernalia, namely a "crack pipe," in his boot. Mr. Bekhtyar admitted to having had recently smoked crack cocaine after the police officer read him his *Miranda* rights.

On April 6, 2015, Mr. Bekhtyar met with the probation officer and admitted to having possessed crack cocaine and a crack pipe on April 5. Mr. Bekhtyar denied that crack cocaine was located on the driver's seat when he was approached by police. Rather, Mr. Bekhtyar told the probation officer that there was no crack cocaine in the driver's seat because he had smoked all of it. Mr. Bekhtyar provided the probation officer with a copy of the misdemeanor citation.

This case was dismissed on August 11, 2015.

**2.** **The defendant shall refrain from the excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician.**

On April 6, 2015, Mr. Bekhtyar submitted a urine sample which tested positive for the use of cocaine. Mr. Bekhtyar admitted to using the illegal drug.

Mr. Bekhtyar admitted to purchasing and using several hundred dollars' worth of crack cocaine over the course of Saturday, April 4, and Sunday, April 5, 2015, in and around the J.C. Napier housing projects in South Nashville.

On April 16, 2015, Mr. Bekhtyar submitted a urine sample which tested positive for the use of cocaine. Mr. Bekhtyar admitted to using the illegal drug.

Mr. Bekhtyar admitted to purchasing and using several hundred dollars' worth of crack cocaine over the course of the afternoon and evening of Wednesday, April 15, 2015, in and around the J.C. Napier housing projects in South Nashville.
On May 6, 2015, Mr. Bekhtyar submitted a urine sample which tested positive for the use of cocaine. Mr. Bekhtyar admitted to using the illegal drug.

Mr. Bekhtyar admitted to using a small amount of powder cocaine on Monday, May 4, 2015.

On May 8, 2015, Mr. Bekhtyar submitted a urine sample which tested positive for the use of cocaine.

Mr. Bekhtyar denied any use of the drug after May 4, 2015. On the U.S. Marshals booking sheet dated May 8, 2015, Mr. Bekhtyar admitted using cocaine on May 5, 2015.

On October 16, 2015, Mr. Bekhtyar submitted a urine sample which tested positive for the use of cocaine. He admitted to using the illegal drug.

**3.**    **The defendant shall participate in a program of drug testing and substance abuse treatment which may include a 30-day inpatient treatment program followed by up to 90 days in a community correction center at the direction of the United States Probation Office. The defendant shall pay all or part of the cost for substance abuse treatment if the United States Probation office determines the defendant has the financial ability to do so or has appropriate insurance coverage to pay for such treatment.**

On the morning of April 15, 2015, Mr. Bekhtyar agreed to participate in a 30-day inpatient treatment program in the event he further used any controlled substances. That afternoon, he used crack cocaine. The next day, the probation officer referred Mr. Bekhtyar to Buffalo Valley, a 30-day inpatient treatment program in Hohenwald, Tennessee. Mr. Bekhtyar agreed to participate. He was to be admitted on or before 2:00 p.m. on April 22, 2015. On the morning Mr. Bekhtyar was to be admitted, he refused to participate in the recommended 30-day inpatient treatment program.

On May 22, 2015, the Court ordered that Mr. Bekhtyar be released from custody in order to enter into inpatient treatment at Buffalo Valley. On May 26, 2015, he was released and transported to the Buffalo Valley Inpatient Treatment Program. On May 29, 2015, he was involuntarily terminated from the Buffalo Valley Treatment program due to consuming alcoholic beverages. Mr. Bekhtyar admitted to consuming the alcoholic beverages.

**On the morning of December 11, 2015, the probation officer drove to Mr. Bekhtyar's home in effort to perform an unannounced drug test. After waiting nearly an hour for Mr. Bekhtyar to produce a urine sample, the probation officer instructed him to report to the probation office between the hours of 2:30 p.m. and 3:30 p.m. that afternoon, to provide a urine sample for drug testing. Mr. Bekhtyar failed to report to the probation office for drug testing on the afternoon of December 11, 2015.**

On the morning of Monday, December 21, 2015, the probation officer unsuccessfully attempted to contact Mr. Bekhtyar by telephone in order to instruct him to report to the probation office to provide a random drug test. Mr. Bekhtyar returned the probation officer's call after business hours. On the morning of Tuesday, December 22, 2015, the probation officer again called and instructed him to report to the probation office to provide a urine sample for drug testing. Later, the probation officer drove to Mr. Bekhtyar's home in effort to perform the drug test. After waiting nearly thirty minutes for Mr. Bekhtyar to produce a urine sample, the probation officer instructed him to report to the probation office at 8:00 a.m. on December 23, 2015, to drug test. Mr. Bekhtyar failed to report to the probation office for drug testing as instructed on the morning of December 23, 2015.

**4.** **The Defendant shall be subject to a period of home confinement of at least 90 days and up to 180 days, as determined by the Probation Officer, after release from in patient substance abuse treatment. The Defendant shall report to Probation Office on the day of his release from inpatient substance abuse treatment to be fitted with a location monitoring device. While on home confinement, the Defendant is required to reside with his parents. The Defendant will be required to remain at his residence at all times except for approved absences for gainful employment, attorney visits, religious services, medical care or treatment needs, participation in substance abuse treatment, and other such times as may be specifically authorized by the Probation Officer. Home confinement will be monitored with a location monitoring device which may include a global positioning unit (GPS). If GPS monitoring is utilized, the Defendant shall keep the tracker unit on his person at all times when outside of his parent's residence. The Defendant may be required to pay all or part of the cost of electronic monitoring at the prevailing rate according to his financial ability, as determined by the Probation Officer.**

On July 23, 2015, Mr. Bekhtyar was released from inpatient substance abuse treatment and reported to the probation office the following day to be fitted with a location monitoring device. On July 24, 2015, the probation officer fitted Mr. Bekhtyar with a GPS monitoring device. At that time, Mr. Bekhtyar signed an agreement acknowledging the rules of home confinement and location monitoring.

Per his schedule, Mr. Bekhtyar was permitted a curfew of 10:30 p.m. on the evening of October 15, 2015, to attend a 12-Step meeting at Woodmont Christian Church in Green Hills. Mr. Bekhtyar did not attend the meeting and failed to return home at curfew as instructed. Mr. Bekhtyar did not return home at all during the evening of October 15, 2015, or the early morning hours of October 16, 2015. Rather, GPS tracking indicates that Mr. Bekhtyar spent the evening and morning in an area of West Nashville known for high drug activity.

Per his schedule, Mr. Bekhtyar was permitted to leave his home over the weekend after the Thanksgiving holiday on November 28-29, 2015, to visit with family, eat a Thanksgiving meal, and attend religious services. GPS tracking indicates that Mr. Bekhtyar spent the bulk of both days at his significant other's residence without permission.

Mr. Bekhtyar was permitted to leave his home on Thursday, December 3, 2015, to attend a job interview and attend a 12-Step meeting at Woodmont Christian Church in Green Hills. GPS tracking indicates that Mr. Bekhtyar spent the evening at his significant other's residence without permission rather than attend the 12-Step meeting as approved.

Mr. Bekhtyar was permitted to leave his home on Saturday, December 5, 2015, to go holiday shopping with his mother and sister then plan and lead a substance abuse recovery meeting at Cumberland Heights that afternoon and evening. GPS tracking indicates that Mr. Bekhtyar spent most of the day at his significant other's residence without permission rather than plan and lead a substance abuse recovery meeting that afternoon and evening as approved.

## Compliance with Supervision Conditions and Prior Interventions:

Jamal Bekhtyar is currently unemployed. He lives with his mother and father in White House, Tennessee. His term of supervised release began on March 18, 2015, and is due to terminate on March 17, 2018.

Following his release from custody, the probation officer placed Mr. Bekhtyar in a random drug testing program and referred him to Centerstone Mental Health for a substance abuse assessment. On April 7, 2015, Mr. Bekhtyar failed to attend the assessment. On April 10, 2015, the probation officer submitted a report to the Court that set forth Mr. Bekhtyar's non-compliance up to that point. The probation officer requested the Court take no further action. The Court ordered such on April 13, 2015. Mr. Bekhtyar rescheduled his substance abuse intake assessment.

On April 14, 2015, the probation officer contacted Detective James Bledsoe, Jr., of the Nashville Metropolitan Police Department. Det. Bledsoe stated he was investigating a theft of a television from the Walmart in Madison, Tennessee. Det. Bledsoe said the theft occurred at or near 2:00 a.m. on the morning of April 6, 2015. He advised video surveillance captured footage of Mr. Bekhtyar's vehicle, a black Lexus, in the Walmart parking lot at the time of the theft. He further advised an individual resembling Mr. Bekhtyar was captured on video surveillance exiting the Walmart with a television in a shopping cart after having not paid for the item. The probation officer told Det. Bledsoe that Mr. Bekhtyar had been cited for misdemeanor possession of crack cocaine roughly two and one-half hours before the theft.

On the morning of April 15, 2015, Mr. Bekhtyar attended a substance abuse intake assessment at Centerstone Mental Health. The treatment provider recommended Mr. Bekhtyar participate in Intensive Outpatient Therapy (IOP) and bi-monthly individual substance abuse counseling. Mr. Bekhtyar reported for drug testing later that morning and submitted a negative test. Following drug testing, Mr. Bekhtyar met with the probation officer and supervisory probation officer concerning his drug addiction and the proposed treatment recommendation. He agreed to participate in IOP and bi-monthly individual substance abuse counseling under the condition he remain substance free. Mr. Bekhtyar agreed to enter a 30-day inpatient treatment program in the event he again used drugs.

Afterwards, Mr. Bekhtyar met with Det. Bledsoe in the probation office while in the presence of the probation officer and supervisory probation officer. Det. Bledsoe questioned Mr. Bekhtyar about the theft. Mr. Bekhtyar denied involvement in the television theft on April 6, 2015, and told the detective he had let someone borrow his vehicle that morning. Mr. Bekhtyar has not been charged with the television theft.

Later that afternoon, the probation officer received a voice message from Mr. Bekhtyar's mother, Linda Bekhtyar, expressing concern that her son was in the J.C. Napier housing projects. That evening, the probation officer called Mrs. Bekhtyar. She stated she and her husband had received telephone calls from

individuals who claimed her son owed them the title to the vehicle he drives. She believed he had promised the car title to these individuals in return for crack cocaine. Mrs. Bekhtyar suspected her son was again using crack cocaine. On the morning of April 16, 2016, Mrs. Bekhtyar called and left the probation officer a voice message indicating Mr. Bekhtyar had returned home. In a follow up phone conversation, she advised the vehicle her son drives, titled in her and her husbands' names, had been damaged due to an unspecified event. She further stated he had somehow accessed nearly $400 and brought it with him to the J.C. Napier housing project area in South Nashville, immediately following his report to the probation office the day before.

On April 16, 2015, the probation officer and deputy chief probation officer drove to Mr. Bekhtyar's home and met with him and his parents. Mr. Bekhtyar acknowledged the agreement to enter a 30-day residential substance abuse treatment program in the event he used drugs and verbalized his desire to enter such a program. Mr. Bekhtyar signed a contract program plan to enter Buffalo Valley, a residential substance abuse treatment facility in Hohenwald, Tennessee. The probation officer directed Mr. Bekhtyar to enter the program on Friday, April 17, 2015. Due to admission and administrative issues, Mr. Bekhtyar was later scheduled to be admitted on April 22, 2015, on or before 2:00 p.m.

On the morning of April 22, 2015, Mr. Bekhtyar cancelled his admission into the treatment facility. In response, the probation officer called Mr. Bekhtyar and instructed him to admit himself as planned. He refused to enter the program as referred and stated he would be better served by receiving substance abuse treatment by participating in outpatient therapy. The probation officer reminded Mr. Bekhtyar of the substance abuse treatment condition contained in his Judgment and Commitment Order and instructed him to report to the probation office later that afternoon for drug testing. That afternoon, Mr. Bekhtyar reported as instructed and submitted a negative drug test.

On the afternoon of May 4, 2015, the probation officer received a voice message from Mrs. Bekhtyar that indicated she suspected her son was again using cocaine. During a telephone conversation the following day, Mr. Bekhtyar denied using cocaine and stated he had consumed alcohol the afternoon before. After Mr. Bekhtyar tested positive for cocaine on May 6, 2015, he admitted to using cocaine by way of nasal insufflation on May 4, 2015.

On April 28, 2015, the probation officer submitted a petition to the Court recommending that a warrant be issued for Mr. Bekhtyar due to multiple violations of his term of supervised release. The Court ordered such on May 5, 2015. On May 8, 2015, Mr. Bekhtyar was arrested on the warrant and appeared before U.S. Magistrate Judge Griffin for an initial appearance. On May 14, 2015, a probable cause and detention hearing was held before U.S. Magistrate Judge Clifton Knowles, at which time Mr. Bekhtyar was ordered continuously detained pending a final revocation hearing before the Court. On May 22, 2015, defense counsel submitted a proposed agreed order to the Court requesting that Mr. Bekhtyar be permitted to attend inpatient substance abuse treatment at Buffalo Valley, Inc. The Court ordered such that same day. Mr. Bekhtyar was ultimately involuntarily discharged from the program due to consuming alcohol on the premises in violation of program rules.

On June 1, 2015, a superseding petition for a warrant was submitted to the Court due to Mr. Bekhtyar's removal from the inpatient substance abuse treatment program at Buffalo Valley. The following day, the Court ordered the issuance of a warrant. Mr. Bekhtyar was again arrested and appeared before U.S. Magistrate Judge Griffin. He waived detention. On June 23, 2015, defense counsel submitted a proposed agreed order to the Court requesting that Mr. Bekhtyar be permitted to attend inpatient substance abuse treatment at Cumberland Heights. The Court ordered such that same day and set a revocation hearing for August 26, 2015.

Mr. Bekhtyar entered and successfully completed a 28-day inpatient substance abuse treatment program at Cumberland Heights, in Nashville, Tennessee. He was released on July 23, 2015, and immediately

began an Intensive Outpatient Program through the same treatment provider, which he successfully completed as well on August 31, 2015.

On August 26, 2015, the Court ordered Mr. Bekhtyar's revocation hearing continued until March 2, 2016.

On October 16, 2015, the probation officer met with Mr. Bekhtyar at his home. He reported he relapsed the day before and smoked approximately $200 worth of crack cocaine over the course of the evening and early morning hours of October 15-16, 2015. That same day the probation officer submitted a petition to the Court recommending that a warrant be issued for his arrest. The Court ordered such on October 21, 2015. He appeared before U.S. Magistrate Judge Bryant for an initial appearance and was released to the same conditions of his supervised release pending a revocation hearing. On November 18, 2015, the Court rescheduled Mr. Bekhtyar's revocation hearing to December 9, 2015.

On October 23, 2015, Mr. Bekhtyar was readmitted into an Intensive Outpatient Substance Abuse treatment program at Cumberland Heights, which he again successfully completed on November 30, 2015. Mr. Bekhtyar has provided five negative drug screens since late-October 2015.

On November 23, 2015, Mr. Bekhtyar called the probation officer and requested a deviation from his home confinement schedule to permit him to eat a Thanksgiving meal with and visit out-of-town family members in Franklin, Tennessee, over the holiday weekend of November 28, 2015. The probation officer permitted Mr. Bekhtyar to leave his home on November 28, 2015, and again on November 29, 2015, to visit with family for the holiday and attend religious services. GPS tracking indicates that rather than spend time with family members and attend religious services as approved, Mr. Bekhtyar spent the bulk of both days at his significant other's apartment without permission. GPS tracking indicates Mr. Bekhtyar arrived at her apartment at 8:38 a.m. on the morning of November 28, 2015, and departed at 9:02 p.m. that evening. Roughly six hours of the day was spent at a location in Williamson County that Mr. Bekhtyar asserts is a family member's house. GPS tracking also indicates he arrived at his significant other's apartment at 9:50 a.m. on the morning of November 29, 2015, and departed at 6:14 p.m. that evening. On Sunday, November 29, 2015, at 4:24 p.m., Mr. Bekhtyar sent the probation officer a text message asking, "My mom and I can't remember if I am supposed to be home at 7 or 8? We just don't want to be late." He later text messaged the probation officer at 6:37 p.m. advising, "Traffic and road conditions are bad…We may need 10 extra minutes."

On December 1, 2015, Mr. Bekhtyar called the probation officer and requested a deviation from his home confinement schedule on Thursday, December 3, 2015, to permit him to interview for a position at a Belk Department Store at the Cool Springs Galleria prior to attending a preapproved 12-Step meeting at Woodmont Christian Church in Green Hills. GPS tracking indicates that Mr. Bekhtyar did indeed go to the Cool Springs Galleria. However, GPS tracking indicates that rather than attend a 12-Step meeting at Woodmont Christian Church, Mr. Bekhtyar spent the evening at his significant other's apartment in Franklin, Tennessee, without permission. GPS tracking indicates he arrived at her apartment on the afternoon of December 3, 2015, at 4:22 p.m. and departed at 9:24 p.m.

On December 4, 2015, Mr. Bekhtyar spoke to the probation officer and requested a deviation from his home confinement schedule on Saturday, December 5, 2015, to permit him to do some shopping in Cool Springs with his mother and sister, plan a recovery meeting with a male peer near Lipscomb University, then lead a substance abuse recovery meeting at Cumberland Heights that evening. GPS tracking indicates that rather than plan and lead a substance abuse recovery meeting at Cumberland Heights, Mr. Bekhtyar spent the afternoon and evening at his significant other's apartment in Franklin, Tennessee, without permission. GPS tracking indicates he arrived at her apartment on December 5, 2015, at 08:42 a.m. and departed at 8:05 p.m.

On December 7, 2015, the probation officer questioned Mr. Bekhtyar in regards to his transgressions and geographic accountability issues. He admitted that he did not attend a 12-Step meeting as approved on December 3, 2015, or plan and lead a substance abuse recovery meeting at Cumberland Heights on December 5, 2015. He told the probation officer that he did not intentionally or inadvertently mislead the probation officer to believe he would be somewhere he was not or tell the probation officer "half-truths" as to where he wanted to be or what he wanted to do prior to obtaining approval to deviate from his home confinement schedule and leave his residence on the dates of November 28, November 29, December 3, and December 5, 2015. According to Mr. Bekhtyar, he did not contact the probation officer when his plans had changed on those dates so as to not inconvenience the officer.

**The Court scheduled a revocation hearing for December 9, 2015. On the day of the hearing, Mr. Bekhtyar and the government submitted a proposed agreement to the Court whereby Mr. Bekhtyar admitted to violating the terms of his supervised release as alleged in Docket Entry No. 52 and agreed to serve nine months' custody with no term of supervised release to follow in the event he further violated the terms of his supervised release prior to March 2, 2015. The government conditionally agreed to dismiss the petition to revoke Mr. Bekhtyar's supervised release on that future date so long as he maintained full compliance with the terms of his supervised release and incurred no further violations. The Court entered the order as proposed and amended Mr. Bekhtyar's special conditions to remove his home confinement and electronic monitoring conditions. The Court ordered the revocation hearing rescheduled for March 2, 2016.**

**On December 11, 2015, the probation officer received notification Mr. Bekhtyar had contact with a Metropolitan Nashville Police Officer at or near 4:55 a.m. that morning. At 9:44 a.m. that same day, the probation officer arrived at Mr. Bekhtyar's parent's house in White House, Tennessee, in order to perform an unannounced drug test. Upon arrival, he told the probation officer that he had been in a single car accident earlier that morning. According to Mr. Bekhtyar, he had departed from a female companion's residence near the 12 South area of Nashville when the passenger side tires of his truck hit a curb. He stated that he subsequently lost control of the vehicle and struck a pole. He reported his truck had been towed back to White House. Mr. Bekhtyar denied having been under the influence of intoxicants at the time of the accident and stated that the responding officer gave him a field sobriety test. As of the date of this report, the probation officer's attempts to contact the responding police officer about this incident have been unsuccessful.**

**The probation officer was on site at Mr. Bekhtyar's parent's house for approximately fifty minutes on the morning of December 11, 2015. During that time, the probation officer asked him to produce a urine sample to test for the use of controlled substances on three occasions. Each time, he replied that he could not urinate and refused to test, despite having consumed over two bottles of water in the officer's presence. After Mr. Bekhtyar's third denial, the officer instructed him to report to the probation office before the end of the working day to provide a urine sample. The probation officer then called his father, Azad Bekhtyar, to ensure he had a ride to and from the probation office to drug test. Mr. Bekhtyar's father stated he would take his son to the probation office between 2:30 p.m. and 3:30 p.m. that afternoon. The probation officer instructed Mr. Bekhtyar to come to the office and drug test during that time frame. As noted in Violation No. 3, he failed to report to the probation office at all. The probation officer called Mr. Bekhtyar at 4:16 p.m. and left a voice mail. Thereafter, the probation officer spoke to Azad Bekhtyar, who advised that he did not get off of work as expected, was stuck in traffic, and would be unable to retrieve his son to transport him to the probation office. At 4:39 p.m., Mr. Bekhtyar called the probation officer and left a voicemail stating he would be unable to come to the probation office to drug test prior to the end of the working day as instructed.**

**Mr. Bekhtyar reported to the probation office and tested negative for the use of alcohol and drugs on December 18, 2015, a full seven days after his single car accident.**

On the morning of December 20, 2015, the probation officer received a voicemail from a concerned family member[1] of Mr. Bekhtyar. The probation officer called the family member back. According to the family member, Mr. Bekhtyar had not been seen of or heard from since Friday, December 18, 2015. The family member feared that Mr. Bekhtyar had again been using crack cocaine, as when the family member called his cell phone, an unknown individual reportedly answered and offered to sell the phone back to the family member for $150. According to the family member, an attempt to meet with this individual to re-purchase Mr. Bekhtyar's cell phone was made near the intersection of I-65 and Jefferson Street, but that the unknown individual who agreed to sell it did not appear. Additionally, the family member reported that Mr. Bekhtyar had access to a rental car provided by his insurance company that he concealed from his family.

The probation officer sought to contact Mr. Bekhtyar by telephone multiple times at his home on Monday, December 21, 2015, in order to instruct him to report to the probation office for a drug test. Mr. Bekhtyar later called and left the probation officer a voice message after business hours. On the morning of December 22, 2015, at 8:06 a.m., the probation officer called and instructed him to report to the probation office prior to the end of the business day to provide a urine sample for drug testing. Mr. Bekhtyar stated that he would have transportation issues getting to and from the probation office. At 12:31 p.m., the probation officer called Mr. Bekhtyar, instructed him to stay at his house, and advised him that the probation officer would perform a drug test at his residence due to his transportation issues. When the probation officer arrived at his home at 1:31 p.m., Mr. Bekhtyar's mother answered the door and informed the probation officer that he was in the restroom suffering bouts of diarrhea. While in the home, the probation officer spoke to him through the bathroom door. Mr. Bekhtyar stated that he would try to provide a urine sample. When handed the handheld drug testing cup, Mr. Bekhtyar declined to stand to drug test. He verbalized fear that he would lose his bowels and defecate on the bathroom floor in the event he was required to stand. The probation officer then waited approximately twenty to twenty five minutes for Mr. Bekhtyar to continue using the restroom. Afterwards, the probation officer again asked Mr. Bekhtyar to drug test but he again declined to provide a urine sample, citing the same fears as before. The probation officer then instructed Mr. Bekhtyar to report to the probation office at 8:00 a.m. on December 23, 2015, to provide a urine sample to drug test.

Mr. Bekhtyar failed to appear at the probation officer to drug test on the morning of December 23, 2015, as instructed. He later called the probation officer, stated he sought medical treatment for his continued diarrhea on the afternoon of December 22, 2015, and was diagnosed as having Rotavirus, or contagious gastroenteritis.

### Update of Offender Characteristics:

There is no additional information relevant to this section that has not already been provided in this petition.

---

[1] The identity of the family member is known to the probation officer. The family member expressed that he/she desired to remain anonymous so as to not negatively interfere with his/her relationship to Mr. Bekhtyar.

**U.S. Probation Officer Recommendation**:

It is respectfully recommended that the Court order a warrant for Mr. Bekhtyar's arrest and that this additional violation and information be considered when he appears for a revocation hearing. The United States Attorney's Office has been advised of Mr. Bekhtyar's noncompliance and agrees with this recommendation.

Approved: _____
Britton Shelton
Supervisory U.S. Probation Officer

## SENTENCING RECOMMENDATION
### UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE
### UNITED STATES V. JAMAL BEKHTYAR, CASE NO. 3:12-00142

**GRADE OF VIOLATION:** C
**CRIMINAL HISTORY:** I

**ORIGINAL OFFENSE DATE:** POST APRIL 30, 2003   PROTECT ACT PROVISIONS

|  | Statutory Provisions | Guideline Provisions | Recommended Sentence |
|---|---|---|---|
| CUSTODY: | 2 years (Class C felony) 18 U.S.C. § 3583(e)(3) | 3-9 months U.S.S.G. § 7B1.4(a) | No recommendation |
| SUPERVISED RELEASE: | 3 years less any term of imprisonment 18 U.S.C. § 3583(h) | 1-3 years U.S.S.G. § 5D1.2(a)(2) | No recommendation |

18 U.S.C. § 3583(g), *et seq.*, mandates revocation of a term of supervised release for possession of a controlled substance, testing positive for illegal controlled substances more than three times over the course of one year, or for refusal to comply with drug testing imposed as a condition of supervised release.

Under 18 U.S.C. § 3583(e)(3), the Court may revoke a term of supervised release and require the defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release without credit for time previously served on post-release supervision, if the Court finds by a preponderance of the evidence that the offender violated a condition of supervised release. When a term of supervised release is revoked and the defendant is required to serve a term of imprisonment that is less than the maximum term of imprisonment authorized under subsection (e)(3), the Court may include a requirement that the defendant be placed on a term of supervised release after imprisonment. Under 18 U.S.C. § 3583(h), the length of such a term of supervised release shall not exceed the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release, less any term of imprisonment that was imposed upon revocation of supervised release.

**Guideline Policy Statements:** Pursuant to U.S.S.G § 7B1.3(a)(1), upon a finding a Grade C violation, the Court may revoke supervised release or extend the term of supervised release and/or modify the conditions of supervision.

Respectfully Submitted,

Michael C. Wilson
U.S. Probation Officer

Approved by:

Britton Shelton
Supervisory U.S. Probation Officer

# VIOLATION WORKSHEET

1. **Defendant** Jamal Bekhtyar

2. **Docket Number** *(Year-Sequence-Defendant No.)* 0650 3:12CR00142 - 1

3. **District/Office** Middle District of Tennessee

4. **Original Sentence Date** 2 / 22 / 2013
   month   day   year

5. **Original District/Office** _____
   *(if different than above)*

6. **Original Docket Number** *(Year-Sequence-Defendant No.)* 3:12CR00142 - 1

7. **List each violation and determine the applicable grade (see §7B1.1):**

   | Violation(s) | Grade |
   |---|---|
   | Shall Not Commit Another Federal, State, or Local Crime (misdemeanor) | C |
   | Use of Controlled Substances | C |
   | Failure to Participate in Substance Abuse Treatment | C |
   | Refusal to Comply with Drug Testing | C |
   | Non-Compliance with Home Confinement. | C |

8. **Most Serious Grade of Violation** *(see §7B1.1(b))* — C

9. **Criminal History Category** *(see §7B1.4(a))* — C

10. **Range of Imprisonment** *(see §7B1.4(a))* — 3-9 months

11. **Sentencing Options for Grade B and C Violations Only** *(Check the appropriate box):*

    ☒ (a) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is at least one month but not more than six months, §7B1.3(c)(1) provides sentencing options to imprisonment.

    ☐ (b) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than six months but not more than ten months, §7B1.3(c)(2) provides sentencing options to imprisonment.

    ☐ (c) If the minimum term of imprisonment determined under §7B1.4 (Term of Imprisonment) is more than ten months, no sentencing options to imprisonment are available.

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002

LF021
REV 05/01

**Defendant** Jamal Bekhtyar

12. **Unsatisfied Conditions of Original Sentence**

   List any restitution, fine, community confinement, home detention. or intermittent confinement previously imposed in connection with the sentence for which revocation is ordered that remains unpaid or unserved at the time of revocation (see §7B1.3(d)):

   Restitution($) 3974.00      Community Confinement _____

   Fine($) _____            Home Detention _____

   Other _____              Intermittent Confinement _____

13. **Supervised Release**
   If probation is to be revoked, determine the length, if any, of the term of supervised release according to the provisions of §§5D1.1-1.3 (see §§7B1.3(g)(1)).

   Term: _____ to _____ years

   If supervised release is revoked and the term of imprisonment imposed is less than the maximum term of imprisonment imposable upon revocation, the defendant may, to the extent permitted by law, be ordered to recommence supervised release upon release from imprisonment (see 18 U.S.C. §3583(e) and §7B1.3(g)(2)).

   Period of supervised release to be served following release from _____
   imprisonment:

14. **Departure**
   List aggravating and mitigating factors that may warrant a sentence outside the applicable range of Imprisonment:

   N/A

15. **Official Detention Adjustment** (see §7B1.3(e)): _____ months _____ days

Mail documents to: United States Sentencing Commission
Ste 2-500, South Lobby, One Columbus Cir, NE
Washington, DC 20002-8002